Mr. Lara-Bonilla is a Mexican national who was charged with illegal entry and re-entry. At his trial, the prosecutor used a peremptory strike against the only Latino juror who could have made it onto the Pettit jury, even though that juror's responses suggested he would be good for the government. Then, at the remand hearing, after Mr. Lara-Bonilla undermined each of the prosecutor's reasons for the strike, the prosecutor came up with a new reason, one that wasn't supported by her contemporaneous notes. Despite these red flags, the district court found that there was no Batson violation, but in so doing, it committed several legal errors. I will start with what the district court called its expanded record analysis, which is where the court looked at both the prosecutor's original contemporaneous reasons along with the prosecutor's new reasons. At the time of the Batson objection, the prosecutor stated she struck Juror Fernandez for two reasons. First, because he was an engineer, and in her view, engineers tend to overthink matters. And second, because Juror Fernandez was likely to be sympathetic to immigrants, such as Mr. Lara-Bonilla. At the time of the remand hearing, the prosecutor came up with a third new reason, which was that Juror Fernandez didn't have any prior jury service. At that point, the district court was required to determine whether the prosecutor's new reason was properly reconstructed, meaning whether circumstantial evidence supported that the prosecutor's new reason was actually her real reason, or simply post a post hoc guess. Since it only takes one good reason to find the Batson violation, why does this one even matter? I actually would disagree that it takes one good reason to find a Batson violation. I apologize. This reason, perhaps, well, it does matter because this reason shows- This is clearly neutral. I mean, it's race neutral. It is everything neutral, the prior jury service. And she does have some contemporaneous notes that noted whether there was prior jury service of the other members of the jury pool. So why isn't the real question, the question about the engineer and the sympathetic, if those were pretextual, then we should just send it back? Well, for two reasons. First, I think that the contemporaneous notes show that the prosecutor didn't write down anything about Juror Fernandez's prior jury service. She did write it down. Sure, but again, why does it even matter? Well, if I turn to the prosecutor's other reasons, so the engineer's, I think each of the other reasons that she provided were actually undermined by a comparative juror analysis. Right. And if they're undermined, then the fact that she's got maybe one good reason doesn't save it for the prosecution, right? That would be your contention, right? I would agree with that position. Then it's largely irrelevant. The real question is whether the first two reasons, the ones that she first offered, are pretextual. I would agree with that, Your Honor. The only reason that I started with the new reason is that the Supreme Court has said that when a prosecutor offers shifting reasons, that that can be additional evidence of pretext. But I would agree with you, Your Honor, that if the court ---- I mean, we're in a little bit of an awkward situation because we did send this back. Correct. And there was a lot of debate as to whether the judge should consider it or not consider it. And he cut this one every which way he could. He found that you didn't have a case at step one. But he went on to step two and step three out of an abundance of caution. And at step three, he said, I'm going to do it two different ways. So it looks like he's tried to cover all of the bases. I would agree that Judge Burns gave this a good faith effort, but I still think that there are legal errors. And so with respect to even if we can find the analysis to the prosecutor's original reasons, the engineer-based reason, the error with the district court here is that when Mr. Larabonia pointed out that there were, in fact, several other jurors whom the government didn't strike that were engineers and which the district court recognized engineering-like professions, the district court then came up with a reason why the prosecutor didn't strike those other people. So he said, well, the government only gets six peremptories, and so I can kind of understand why they're not going to strike all of the engineers. But a district court isn't allowed to speculate as to why a prosecutor did or did not strike similarly situated jurors. Now, you played this very cleverly, because you said that they failed to strike engineers and others that were engineer-like. And that's a little bit of a trick, because there really was only one other engineer who did make this on. And the prosecutor explained that she just spaced it. She missed that he was an engineer. And the others really aren't engineers. One working as an administrative assistant to an engineering firm is not an engineer. Folks in the high-tech industry, people who work on computers, may do things where they work with engineers. But there's a difference between being an engineer and working in a high-tech industry. Well, Your Honor, I think Judge Burns actually disagreed with that reasoning. So the juror who worked for Amazon, he said he was a video game programmer, which is a software engineer. And Judge Burns recognized that he was doing essentially an engineering-type function. But being a software engineer, there's no professional engineer certification required to be a computer programmer, is there? I'm not aware of that, Your Honor. I do know that video game programmers, I don't know. There's a difference between professional engineers, mechanical, civil, electrical, who do require professional qualifications in order to call themselves an electrical engineer. A computer programmer can be just about anybody. Well, even if we set aside those software engineers, Your Honor, there was Juror Poynter, who was a semi-retired electrical engineer. The prosecutor explained. She just spaced. She just missed it. Correct, Your Honor, but if engineering was such an important criterion for the prosecutor, one would expect that she would have written it down on her notes when she heard that Juror Poynter said that. And so I think her explanation is undermined by her contemporaneous notes and by her testimony that engineering was essentially a critical reason why jurors were not supposed to serve on this jury. And then I think the other problem with the district court's analysis is that the prosecutor gave a second contemporaneous reason, which was that Juror Fernandez was going to be sympathetic to immigrants. And so Judge Byrne specifically asked Juror Fernandez if he had any strong views on the immigration laws, and he said, no, just the law is what it is. That's at ER 194. That was no different than what two other jurors said whom the government didn't strike. So Juror Graf at ER 23 said when asked about his views on the immigration laws, he said, no, I'm not real strong on that, no. And then Juror Kampnell said he had no strong feelings about the immigration laws. But the district court never conducted a comparative juror analysis with respect to that second reason. It simply focused exclusively on the engineer-based rationale and never did a meaningful evaluation of the prosecutor's second reason. And in Curry v. McDowell, a habeas case, this court found that there was error when the district court stopped evaluating at only the first reason that the prosecutor gave. Because the question under Batson isn't whether there's a race-independent reason. The question is whether there's race as a substantial motivating factor. So a district court can't simply stop the analysis after looking at just one of the prosecutor's multiple reasons. If there are no further questions, I'd like to reserve the remainder of my time for rebuttal. Thank you. Good morning. May it please the court, Caroline Hahn on behalf of the United States. Your Honors, I did not strike Mr. Fernandez as a juror because he's Latino or for any other discriminatory purpose. I did so because of the nature of his employment and also because of his spouse's recent interaction with the immigration system because he had naturalized as a U.S. citizen in the year preceding the trial. And as the record reflects and as we would urge the court to note, the district court properly applied the Batson framework. Why was it that you didn't come up with the reason that he lacked jury experience the first time around? Your Honor, I have to take issue with your term, come up. I guess I would say that why I didn't. Well, you didn't write it down, right? That is correct, Your Honor. I did not write it down. And then you didn't cite it the first time. And then it was only upon remand that you came up with that additional reason. Your Honor, I stated it. I cited it at that second hearing in 2018 because in reviewing the record and in response to the appellant's brief, I looked back through my notes and other concerns that I had that day and jury service was one of them. But doing that is in hindsight. Now you're looking at things to find other reasons that you could have come up with at the time. And I don't – I mean, I think the Supreme Court has said that, you know, coming up with reasons that you didn't state the first time around tends to make the first reasons look perhaps pretextual. Because, you know, if these were legitimate reasons, you would have said them at the time. Well, Your Honor, I would say that the court actually doesn't have to engage on the jury service issue at all. I actually withdrew that reason at ER 171 and 172. And that is because we stand comfortably on the original reasons cited, which are that he was an engineer and he had this relative who had become a naturalized U.S. citizen. And as a result, we had concerns that he would have sympathy for immigrants. That he stated that he didn't have any particular experience or thoughts about immigrants and immigrant law. Your Honor, I believe – when he said it is what it is, I – in the context of that morning's hearing, in which Ms. Dellatori, the juror that was struck for cause, had gone on and on about the discriminatory application of the immigration system, it was something particularly on that day she cited that there was a Ninth Circuit argument that day. It was at quite a time in February of 2017, right after the election. At that time, I believe it was the travel ban case that was argued that she cited earlier. And so in light of that context, I was concerned that this juror, because of his close contact with his partner who was an immigrant, legal, would have any sympathy at all for all immigrants, legal, or someone like the appellant who was in the United States unlawfully. So we believe that the district court applied the Batson framework appropriately, and we believe that the court can look at the factual determinations and also the credibility determinations and affirm because the district court did not commit clear error. As I explained, our two reasons were that he was an engineer and that he had his partner with a legal immigrant status or U.S. citizen. Your Honor, generally, as I explained, I had some concerns about engineers on juries. Certainly that is not a bar in every single case. In this case, I did have some concern. Because of the nature of the case, it is relatively straightforward, but what we anticipated being a defense because of the reciprocal discovery that we had received was that the issue would be on the entry issue, because where the defendant entered in this case is a place where there is no actual border wall fence at all. There is essentially only some chicken wire that divides the United States and Mexico. In light of that, I had some concerns that Juror Fernandez, in light of his position and in light of the way engineers think where they want things to fit together and they can overcomplicate things, I was concerned about having him as a juror in this case. I don't understand how the chicken wire fence has anything to do with how an engineer thinks. Your Honor, so in this case, at trial, the appellant claimed that he did not knowingly enter the United States, right? That he sort of wandered in, that it was possible for him to wander in from Mexico, right? Because there was essentially nothing that divided, that made it clear that between the United States and Mexico that, in fact, he was in the United States. It turns out not to be true. He made a significant entry from that chicken wire. It was the kind of thing where I thought that someone who is an engineer who likes things to fit together and for there not to be controversy might take issue with. In retrospect, I understand the court has some skepticism. However, the court doesn't have to. I don't understand. Just try articulating that connection one more time for me. Okay. Your Honor, so in this particular case, the defense was that he did not knowingly enter the United States, right? And so he essentially claimed that, and he had a witness that he put on who essentially put on all these photographs that essentially showed that there's no sign that says that you're in the United States versus Mexico, right? All there was was this chicken wire. And so it was possible for the defendant to accidentally wander into the United States. We had other evidence to rebut that, obviously, but I had concerns that because engineers like things to fit together and for them to be straightforward and they like to overthink things, that that might be something that Mr. Fernandez, as an engineer, and Mr. Marin, as an engineer, might get caught up on. That is the reason that I – one of the reasons that I struck Mr. Fernandez. Did you strike any other engineers? Yes, Mr. Marin, juror number four. You missed Mr. Poynter. Yes. As I explained at the expanded hearing, I did not note that Mr. Poynter was an engineer, and I understand in reading the record that that is clear that he was an engineer, but I did not write that in my notes, and I did not appreciate that. Your Honors, I also think it's relevant that during the voir dire that the district court went backwards, that it started with number 35 and went to number one. And so I think that plays some impact as to taking the notes. I took much more rigorous notes earlier on, and as time went on, I took less notes as the voir dire time period went on. And in addition, I struck him because of his partner's immigration status, and the district court found those two reasons to be race neutral, and then it moved on to step three and assessed those reasons individually and altogether. Did it fully analyze step three? Yes, Your Honor. Can you tell me where in the record? Yes, Your Honor. It analyzed step three in terms of an engineer alone, engineering alone at 193, in terms of immigration at 129, 161, 166, and 187, and it stated at 168, but I had no reason to doubt her bona fides in saying that those are the reasons and they seem like neutral reasons to me. It also conducted, it took a step back and evaluated all of the reasons at 194 and said I find them to be neutral, sincere reasons. It also made a credibility determination on 194 and finding them to be neutral and sincere reasons. Your Honor, the appellant has argued about the comparative analysis, and we would argue that the comparative analysis that the district court did was appropriate, but that a true comparative analysis would have been against someone who was an engineer and who also had a relative who had some experience with the immigration system, as in Herrera-Rivera, in which this court found that there were no people that had criminal history as well as relatives with a drug history, as well as Alvarez-Ulloa, juror 25, and Alvarez-Ulloa was somebody who had the two factors. He had the interest in immigration, and then he also had an interest in boxing as well. And so those two factors must be taken into account. But as to the issue as to whether or not the district court did actually evaluate the immigration issue, the district court did in fact do so and did so on several different occasions, including at ER 161, 166, and 187. Additionally, Your Honor, the appellant argues that there was error because the district court inserted itself by talking about the United States not having sufficient number of strikes. Your Honor, that is not an issue at this point because that occurred at the original trial and was not an issue that arose at the expanded hearing. Additionally, Your Honor, they also argue that the district court also rejected the four cause challenge. We believe that it is inappropriate given that both parties agreed to the four cause challenge and they were not initiated by the United States. And for those reasons, because the district court properly applied the Batson framework, we believe this case should be affirmed. Counsel, I have one last question. Ms. Ragupathy, I believe in her brief, has suggested that if we do reverse this, that we should send it back to a different judge. How would a different judge be able to evaluate a case like this? I don't think that a different judge would evaluate it differently. I think much of the concern of the district court is that the district court should be able to do so. Well, they might not evaluate it differently. I'm asking how could they even do it if they haven't seen what transpired in the courtroom on that day? Yes, that is of concern. They could not make the credibility determinations from the extended hearing as well as at the trial as well. That is of concern. Also, this is not a case in which there are unusual circumstances such that the court cannot take any direction that this court may have and analyze and make the proper analysis. But, again, we believe that a different judge certainly could run a comparative analysis if we thought that that was required. And credibility determinations of lawyers. But we're going to be missing having seen the juror himself. Yes, that is correct, Your Honor. Essentially, if we were to reverse and send it back, we'd be saying there was VATS in error because there's no other way to look at this record. And I don't think sending it to another judge, that judge would be in the exact same position that we're in. There's just no ability to judge the credibility. And we would urge the court that because there is a full record, because, as Judge Bybee explained, that the court did its analyses in various different ways, there is a full record. The court can take a de novo approach and can find that the engineering and the relationship to the spouse were two race-neutral reasons and that I had no discriminatory purpose in striking Mr. Fernandez. All right. Thank you, counsel. So I wanted to correct one thing that government counsel mentioned, which is that our argument that Judge Burns had invented a reason why the government was not striking the other engineers, she said that was only at the time of the original objection. It actually came up at the remand hearing on page 189, so I do think it's something that this court can evaluate as part of the procedural error here. Second, counsel mentioned that the standard here of review is clear error, but because our position is that Judge Burns committed multiple procedural violations of VATS, the standard of review would actually be de novo, not clear error. And then third, in terms of a remand, or third, I would agree that we haven't been able to find a juror that meets all three criteria that the government has suggested that Juror Fernandez had, but the Supreme Court in Millerell in footnote six specifically said that jurors aren't a product of a set of cookie cutters. And so if that were the standard for VATS, then it would render a comparative juror analysis inoperable. And so what the government is suggesting that we have to find an exactly identical juror for non-Latino juror whom the government didn't strike, the Supreme Court has rejected that very position. And then lastly, in terms of a remand to a different judge, we would continue to maintain that that is the remedy that's appropriate here. I understand that a new judge hasn't seen the voir dire, but Judge Burns himself on the record said that he didn't remember what happened because the remand hearing, by the time of the remand hearing, the trial had occurred 18 months earlier. But what a new district court judge could do that this court couldn't do would be to conduct a credibility determination. So they could take new testimony from the prosecutor. They could do a new comparative juror analysis. And that would be something that would be, I think, better situated for a district court than this court. Alternatively, if this court were to reach the issue de novo, I think we have met our burden at step three because each of the government's three reasons crumbles upon a comparative juror analysis. So our position is that there are three other engineers the government didn't strike, that there were two other people who answered similarly the question about immigration laws, and then seven of the 12 jurors who actually served on the pettit jury all had prior jury service. So each one of the reasons that the government has provided is undermined by a comparative juror analysis. And so for that reason, we'd ask either for a remand or for a reversal. Thank you. All right. Thank you, counsel. United States v. Lara Bonilla is submitted.
judges: Fernandez, Wardlaw, Bybee